Alfred RUSSOM et al., Appellants,

v.

SEARS, ROEBUCK AND CO., a corporation, and Local 610, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and Local 688, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Appellees.

No. 76–1702.

United States Court of Appeals, Eight Circuit.

Submitted May 17, 1977.

Decided June 29, 1977.

Rehearing and Rehearing En Banc Denied July 20, 1977.

Kenneth V. Bryne, St. Louis, Mo., for appellants.

Kalvin M. Grove, Chicago, Ill., for appellee, Sears, Roebuck and Co.; Burton L. Reiter, Chicago, Ill., on brief.

Harry H. Craig, Wiley, Craig, Armbruster, Wilburn & Mills, St. Louis, Mo., for appellee, Unions; Clyde E. Craig, St. Louis, Mo., on brief.

Before STEPHENSON and WEBSTER, Circuit Judges, and BENSON,* District Judge.

STEPHENSON, Circuit Judge.

This appeal involves claims initiated by Alfred Russom and other individuals against Teamsters Local 610, Teamsters Local 688 and Sears, Roebuck and Co. pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). In general, the complaint alleges that Local 610 breached its duty of fair representation, that Sears breached a collective bargaining agreement, and that all three defendants engaged in a conspiracy to deprive union members of pension and seniority benefits. The district court,[1] sitting without a jury, entered judgment in favor of the defendants, and we affirm.

The facts are detailed comprehensively in the district court's opinion and need only be briefly summarized. See Russom v. Sears, Roebuck and Co., 415 F.Supp. 792 (E.D.Mo. 1976). In 1956 Dependable Appliance Service, Inc. (DAS) was formed for the purpose of providing service for home appliances. DAS performed substantially all of its busi-

---

* The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

ness for Sears. In 1974 the president and owner of DAS, John Baumler, decided to retire and cease business operation of DAS. Baumler's retirement was motivated by reasons attributable to his health and age. Sears and Local 610, the representative of the DAS employees, were informed of his decision. Sears subsequently determined to establish its own appliance service department and offered employment to the DAS employees. Sears purchased some of the DAS assets.

When DAS terminated its business operation, the employees received severance pay. Substantially all of the employees then accepted employment with Sears. A majority of the former DAS employees signed cards authorizing representation by Local 688, the bargaining agent of service employees of Sears.

It is undisputed that the DAS employees lost important benefits through their termination with DAS and subsequent employment with Sears. The DAS–Local 610 collective bargaining agreement had required that DAS contributed to the Teamsters' pension fund, but the employees' rights in the fund would not have vested until 1978. When DAS ceased operation the employees lost their pension rights. After employment with Sears, the former DAS employees entered into negotiations through Local 688 toward a new collective bargaining agreement, and a contract was ultimately approved by a majority of the employees on February 13, 1975. This agreement, however, did not provide for contribution by Sears to the Teamsters' pension fund,[2] and the former DAS employees were not given seniority status from the date of their employment with DAS.

Alfred Russom and other former DAS employees filed their claims under section 301 on the basis of these lost employment benefits. They maintain that Sears was bound to the DAS–Local 610 collective bargaining agreement because it allegedly controlled the operation of DAS as a co-employer, that Sears breached the agreement, that Local 610 refused to enforce their rights under the contract, and that Local 688 assisted Sears and Local 610 in depriving the former DAS employees of their pension and seniority benefits.

■ The district court, sitting without a jury, found that Sears and DAS were not co-employers but that Sears was a successor employer to DAS. The trial court concluded that Sears was not bound by the provisions of the DAS–Local 610 collective bargaining agreement. The district court further found that Local 610 may have acted erroneously in failing to demand bargaining or arbitration with Sears but that Local 610 did not breach its duty of fair representation by acting arbitrarily or in bad faith. The court also concluded that it did not have jurisdiction over the conspiracy allegation.[3] This appeal followed.

## I.

Appellants contend the trial court's finding, that Local 610 did not breach its duty of fair representation, is clearly erroneous. More specifically, appellants emphasize that the DAS–Local 610 collective bargaining agreement contained a successor clause which bound Sears to the terms of the contract and that Local 610 would not accept grievances on behalf of DAS employees seeking to invoke the successor clause.[4]

---

**2.** Sears had never agreed to make contributions to the pension fund.

**3.** Courts are not vested with jurisdiction to review claims of conspiracy to violate either a labor contract or an individual's rights under the Labor Management Relations Act. *See Abrams v. Carrier Corp.*, 434 F.2d 1234, 1253 (2d Cir. 1970), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971). *Cf. Woody v. Sterling Aluminum Products, Inc.*, 365 F.2d 448, 456 (8th Cir. 1966), *cert. denied*, 386 U.S.

957, 87 S.Ct. 1026, 18 L.Ed.2d 105 (1967). In any event, we are satisfied there is insufficient evidence of a conspiracy.

**4.** Appellants also claim that Local 688 participated in the deprivation of their pension and seniority benefits. Our inquiry in this section 301 suit, however, necessarily focuses upon the conduct of Local 610 and Sears. Local 688 was not the bargaining representative for appellants when DAS ended its business.

A breach of the duty of fair representation occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). *See Emmanuel v. Omaha Carpenters District Council*, 535 F.2d 420, 423 (8th Cir. 1976); *Richardson v. Communications Workers*, 443 F.2d 974, 978–85 (8th Cir. 1971). Moreover, our scope of review in this appeal is limited. A trial court's findings are clearly erroneous "only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *St. Louis Typographical Union No. 8 v. Herald Co.*, 402 F.2d 553, 557 (8th Cir. 1968).

The DAS employees lost valuable pension and seniority rights when their employment with DAS was terminated and they accepted employment with Sears under a new collective bargaining agreement. Some evidence in the record also suggests that DAS employees wanted to assert their rights under the DAS–Local 610 contract against Sears under the successor clause in the agreement. For example, Thomas Roach, a former DAS employee, testified that he attempted to file a grievance but that the Local 610 representative, Harland Horn, would not accept any grievances.

The record reveals substantial evidence which supports the trial court's finding that Local 610's conduct in failing to demand collective bargaining with Sears when DAS went out of business and in failing to rely upon the successor clause was not arbitrary, discriminatory or in bad faith. Harland Horn, secretary-treasurer of Local 610, testified that he did not recall any discussion with Local 610 members concerning the successor clause and that he did not refuse to accept grievances. Horn also stated that he believed Local 688 had jurisdiction over the service employees after discontinuation of business by DAS and employment by Sears of the former DAS employees.[5]

Furthermore, Sears was not a signatory to the DAS–Local 610 collective bargaining agreement. A successor employer is not bound by the substantive provisions of a collective bargaining agreement negotiated by its predecessor but not agreed to or assumed by the successor. *See NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 281–91, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). *Cf. John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–51, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). The record supports the trial court's finding that Sears was not bound to the provisions of the contract entered into by DAS and Local 610. *See part II infra.* Even assuming Sears were to some extent bound under the collective bargaining agreement, Local 610's failure to enforce the contract would not constitute *ipso facto* a breach of the duty of fair representation. Mere errors in judgment are insufficient to support a claim of breach of the duty of fair representation. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).[6]

## II.

Appellants also contend the trial court's finding, that Sears was not bound under the DAS–Local 610 contract, is clearly erroneous. Emphasizing the interrelationship between the business of Sears and DAS, appellants assert that Sears is liable under the agreement as a co-employer. According to

---

5. A majority of the DAS employees signed Local 688 authorization cards after they accepted employment with Sears.

6. The district court concluded that Local 610's failure to request arbitration with Sears arguably constituted an unfair labor practice but that such a claim was preempted by the National Labor Relations Act, 29 U.S.C. §§ 157 and 158. We agree. Local 610 may have refused to bargain collectively with an employer, which is violative of section 8(b)(3), but the proper forum to litigate such a claim is a proceeding before the National Labor Relations Board.

appellants, all DAS functions were effectively controlled by Sears.[7]

Unquestionably, the business relationship between Sears and DAS was close and to some extent interconnected. For example, there is an indication that DAS may have been formed because of labor relations problems experienced by Sears. Mr. Baumler, the owner of DAS, had been employed previously by Sears for over 16 years. Substantially all of the DAS business was conducted with Sears. The initial employees of DAS were trained by Sears, and additional training was provided by Sears without charge. On service calls DAS employees wore Sears patches on their uniforms and drove trucks bearing a Sears logo. DAS employees received a 10% discount at Sears and participated in numerous contests for Sears employees. Most recently, DAS and Sears operated under a cost-plus arrangement; Sears would reimburse DAS for its costs and ensure a profit margin. Both the management and employees of Sears and DAS maintained an interrelated working relationship.

The record contains substantial evidence, however, which supports the district court's finding that Sears and DAS were not co-employers. Neither company owned any stock in the other. There were not any interlocking officers or directors. DAS was in total control of the wages, hours, working conditions and fringe benefits of its employees. DAS hired and fired its own employees and maintained its own personal personnel records. DAS paid its own liability and workmen's compensation insurance and owned and operated its own trucks and equipment. Although Sears may have made some suggestions concerning operation of DAS, the DAS management made its own decisions. Because DAS serviced appliances for Sears' customers, cooperation between the two companies was obviously necessary. Most significantly, the record reflects that Sears did not sign any contract between DAS and Local 610 and that Sears did not participate in any labor negotiations which preceded formation of such a contract. The evidence supports the trial court's finding that Sears was not bound under the DAS–Local 610 collective bargaining agreement as a co-employer.[8]

Affirmed.

---

7. The doctrine of co-employer status was developed by the National Labor Relations Board to determine the existence of an employer-employee relationship. Sears asserted at trial that the jurisdiction of the NLRB preempts any determination of co-employer status in a section 301 suit. The district court stated that "jurisdiction may exist to determine whether or not Sears and DAS were co-employers" and proceeded to determine that there was no co-employer relationship. 415 F.Supp. at 796. Because Sears was not a signatory to the DAS–Local 610 contract, we are concerned about the viability of the section 301 claim brought in the instant case. *See Baker v. Fleet Maintenance, Inc.,* 409 F.2d 551, 554 (7th Cir. 1969). Nonetheless, in light of the close relationship between Sears and DAS, we believe the district court did not act improperly in deciding whether a co-employer relationship existed.

8. Appellants also contend the trial court committed certain procedural errors including the denial of their motion for a class action, denial of their request for a transcript prior to submission of post-trial briefs, and restriction on the scope of testimony (particularly by limiting testimony to matters not covered in depositions). If not entirely proper, the trial court's rulings on these matters either were not an abuse of its discretion or were not inconsistent with substantial justice.