643 F.2d 1362
 107 L.R.R.M. (BNA) 2445, 92 Lab.Cas. P 13,040
 Marvin KAYLOR; Bert Nickerson; Victor Perez, Jr.; Robert
Perez; Jim Manning; Don Vargas; Jerry Vargas; Frank P.
Mihic; John Ryder; Kenneth Clark; Victor Perez; Jim Valjalo
and Richard Waldie, Appellants,
v.
CROWN ZELLERBACH, INC., a corporation, Western Truck
Manpower, Inc., a corporation; Universal Coordinators, Inc.,
a corporation; Alltrans California Express, a corporation;
Teamsters Local 70; Van-Ward Services, a corporation, Appellees.
 No. 79-4069.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 13, 1980.
Decided May 1, 1981.
 
 David M. Lilly, Jr., San Francisco, Cal., for appellants; Allan I. Shatkin, San Francisco, Cal., on brief.
 Jeffrey C. Freedman, Los Angeles, Cal., William F. Terheyden, Duane B. Beeson, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal. (argued), for appellees; Paul B. Johnson, Patrick J. Szymanski, San Francisco, Cal., on brief.
 Appeal from the United States District Court for the Northern District of California.
 Before WALLACE and CANBY, Circuit Judges, and BURNS, District Judge.*
 CANBY, Circuit Judge.
 
 
 1
 Appellants sued under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. They claimed that Crown Zellerbach breached a contractual duty to employ them or that Crown fraudulently promised to guarantee their future employment. They also claimed that the Teamsters Union failed to represent them adequately during the series of events which led to their present unemployment. Finally, appellants claimed that all the appellees conspired to deprive them of their jobs. The district court dismissed some of appellants' claims and granted summary judgment in favor of appellees on the remaining claims. We affirm the decision of the district court.
 
 FACTS
 
 2
 From January 1965 to March 1975, Crown Zellerbach ran an in-house trucking operation to ship its own goods around the San Francisco Bay area. During that time, various driver supply companies provided Crown with drivers for its trucking operation. Western Truck Manpower supplied Crown with drivers from January 1965 to January 1969; Van-Ward Services supplied them from January 1969 to November 1973, and Universal Coordinators from November 1973 to March 1975.
 
 
 3
 Crown's relationship with the driver supply companies was contractual. The companies supplied drivers to Crown for a fee. Crown had full control over the dispatch, routing, and use of its trucks and the hours of service of the drivers. The companies employed the drivers, however, and remained solely responsible for paying their wages and benefits. Appellants were employed by the various driver supply companies and assigned to drive trucks for Crown. The appellants were members of the Teamsters Union, and were covered by the collective bargaining agreement between Local 70 and the driver supply companies. Crown did not sign the collective bargaining agreement.
 
 
 4
 In January 1969, when Van-Ward took over the Crown account, appellant Manning and union officials expressed their concerns over appellants' job security at a meeting with Van-Ward officers. Van-Ward hired the drivers who had been assigned by Western to Crown, and again assigned them to Crown. Harvey Oakes, a Crown vice president, then wrote a letter to Van-Ward. The letter stated:
 
 
 5
 In the event our agreement with Van-Ward Services, Inc., is terminated and a similar agreement is then entered into with another firm covering the same kind of services at the same locations, we will require such other firms to offer employment to the men working for Van-Ward Services, Inc., and furnished to us at the same levels of wages, seniority, vacation, health and welfare, pension and other rights and privileges which they then have and enjoy under their then existing labor agreements.
 
 
 6
 The Oakes letter was not sent or forwarded to appellants or to the union.
 
 
 7
 In 1972, the union filed an unfair labor practice charge against Crown with the National Labor Relations Board because Crown refused to participate in grievances brought by drivers against Van-Ward. In early 1973, the Board issued a complaint against Crown which alleged that Crown was a joint employer of the drivers with Van-Ward. The complaint was withdrawn as a result of a settlement agreement between the union and Crown. Under the settlement, Crown denied that it was a joint employer of appellants. Crown agreed, however, to send a representative to grievance meetings and to abide by the terms of the collective bargaining agreement until it expired in June 1973. Crown also agreed that when it switched from Van-Ward to another driver supply company, the drivers' seniority would be respected. The union and Crown never met to renegotiate this settlement, although the agreement provided that they would meet again when the collective bargaining contract expired. In November 1973, when Universal took over the Crown account, the Van-Ward drivers who had been assigned to Crown were hired by Universal and assigned to Crown.
 
 
 8
 In March 1975, Crown discontinued its in-house trucking operation. Crown ended its contract with Universal and hired Alltrans, a common carrier, to ship its goods. Alltrans offered to hire appellants. The Alltrans offer provided for "dovetailing" appellants into the existing seniority list of Alltrans drivers. Appellants refused to accept that offer because they believed that the "dovetailing" arrangement would put some of them out of work. Instead, appellants insisted upon a separate seniority list so that they would be assigned to the Crown account ahead of the other Alltrans drivers. Alltrans refused to accept that demand.
 
 
 9
 In July 1975, the union and appellant Kaylor filed identical unfair labor practice charges against Crown with the Board. The charges alleged that Crown had refused to bargain with the union before deciding to contract out its trucking operation to Alltrans. On September 4, 1975, the NLRB Regional Director dismissed the charges, and held that Crown and Universal had met whatever duty they had to bargain with the union. On October 10, 1975, the NLRB General Counsel denied the union's appeal. Appellants then filed this lawsuit.
 
 FAILURE TO EXHAUST GRIEVANCE PROCESS
 
 10
 Individual employees may sue their employer for breach of a collective bargaining agreement under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Smith v. Evening News Association, 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962). With two exceptions, however, an employee must first attempt to exhaust the grievance procedures contained in the collective bargaining agreement. Republic Steel Corp. v. Maddox, 379 U.S. 650, 657-58, 85 S.Ct. 614, 618-619, 13 L.Ed.2d 580 (1965). An employee is not required to pursue the grievance process when the employer's conduct amounts to a repudiation of the contractual remedy, or when the union has the sole power to file a grievance and it has wrongfully refused to do so. Vaca v. Sipes, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967).
 
 
 11
 In this case, appellants have not exhausted the grievance process, but we find that the first exception of Vaca v. Sipes applies. Before the union filed an unfair labor practice charge with the NLRB, it attempted to negotiate a settlement with Crown's attorney. The attorney denied that Crown was bound by the collective bargaining agreement, or that it had any duty toward the drivers. In so doing, Crown repudiated the contractual remedy available to the drivers. The drivers were not required to exhaust the grievance process, because filing a grievance would have been futile. Glover v. St. Louis-San Francisco Railway Co., 393 U.S. 324, 330-31, 89 S.Ct. 548, 551-552, 21 L.Ed.2d 519 (1969).
 
 CONTRACT CLAIMS
 
 12
 Appellants allege that Crown breached a contract to employ them. First, they claim that Crown made a contract which is memorialized by the 1969 Oakes letter. Second, they claim that Crown was bound by their collective bargaining agreement with Universal because of the 1973 settlement agreement with the union or because Crown and Universal were joint employers. Third, they claim that the Oakes letter and the 1973 settlement agreement were fraudulent promises that Crown would guarantee their future employment.
 
 
 13
 The district court dismissed appellants' claim based on the Oakes letter. The court ruled that the Oakes letter was not a written contract. We agree. The Oakes letter was directed to Van-Ward, not to appellants or to the union. It is not alleged that the letter was ever forwarded to appellants or to the union. Because the only controversy was the legal sufficiency of the letter, the court was entitled to rule as a matter of law that the Oakes letter was not a written contract. Bricklayers International Union, Local 15 v. Stuart Plastering Co., 512 F.2d 1017, 1024 (5th Cir. 1975). Appellants also alleged that the Oakes letter memorialized an oral contract of permanent employment.[1] Neither the complaint nor the district court's decision indicates whether this was a federal claim under § 301 or a pendent state law claim.[2] But in either case, the contract alleged by appellants, an employment contract for an indefinite period, is terminable at will by either party. Boeing Airplane Co. v. NLRB, 174 F.2d 988, 991 (D.C.Cir.1949); Pratt v. Local 683, Film Technicians of the Motion Picture & Television Industries, 260 Cal.App.2d 545, 67 Cal.Rptr. 483 (1968). The federal rule additionally requires termination by reasonable notice after a reasonable length of time has elapsed. International Union of Operating Engineers, Local 181 v. Dahlem Construction Co., 193 F.2d 470, 474 (6th Cir. 1951); Eastern District Council, United Brotherhood of Carpenters v. Blake Construction Co., 457 F.Supp. 825, 831 (E.D.Va.1978). We think these requirements were met in this case. Crown did not directly notify the drivers of the contract termination, but Alltrans notified them that it was taking over Crown's trucking operation. Alltrans officials met with the drivers and union representatives to offer them employment when Alltrans replaced Universal. We think that this was a reasonable way for Crown to announce its decision to subcontract six years after the alleged employment contract with the drivers was made. Therefore, even if there were a contract between Crown and appellants, termination of that contract in 1975 would not have been a breach.
 
 
 14
 The district court also ruled by summary judgment that Crown was not bound by the collective bargaining agreement between Universal and appellants' union. We agree. Appellants have produced no genuine issue of material fact to preclude a grant of summary judgment. Heiniger v. City of Phoenix, 625 F.2d 842, 843 (9th Cir. 1980). Crown did not sign the collective bargaining agreement. This alone is not conclusive, since the NLRA does not require a collective bargaining agreement to be in writing or in any particular form. Certified Corp. v. Hawaii Teamsters, 597 F.2d at 1272. But appellants have produced no evidence to bind Crown to the terms of a collective bargaining agreement which it did not sign.
 
 
 15
 The 1973 settlement agreement between Crown and the union bound Crown to the terms of the collective bargaining agreement until June 1973. The parties did not meet to renegotiate once the settlement agreement expired. The alleged breach did not occur until 1975, long after the settlement agreement expired. Appellants offered no facts to show that Crown and Universal were joint employers. The business relationship of Crown and Universal was close and interconnected. But appellants produced no evidence of joint ownership or control of the two companies. Although Crown necessarily directed the drivers to some extent, the trucking company was in control of their wages, benefits, and working conditions. On this record, no issue is raised that Crown and Universal were joint employers of the drivers. Russom v. Sears, Roebuck & Co., 558 F.2d 439, 443 (8th Cir.), cert. denied, 434 U.S. 955, 98 S.Ct. 481, 54 L.Ed.2d 313 (1977); NLRB v. Triumph Curing Center, 571 F.2d 462, 467-68 (9th Cir. 1978).
 
 
 16
 The district court also granted summary judgment to Crown on the fraud claim, ruling that appellants had not shown facts raising a triable issue of fraud based upon the Oakes letter and the 1973 settlement agreement. We agree. Appellants failed to produce any evidence of fraudulent intent. Appellants argue that fraudulent intent may be inferred from Crown's eventual failure to perform according to its promises. It is true that fraud may be inferred from an immediate failure to perform a promise. Santoro v. Carbone, 22 Cal.App.3d 721, 99 Cal.Rptr. 488 (1972); Roberts v. Salot, 166 Cal.App.2d 294, 333 P.2d 232 (1958). In this case, however, Crown initially performed in accordance with the promises made in the documents. In 1973, Crown did arrange for appellants to retain their jobs when Crown switched driver supply companies, just as the Oakes letter indicated it would. Crown did abide by the terms of the 1973 settlement agreement, until it expired in June 1973. Crown's initial performance in accordance with its promises negates any possible inference of fraud. See Justheim Petroleum Co. v. Hammond, 227 F.2d 629 (10th Cir. 1955).
 
 
 17
 Appellants also allege that Universal was liable for breach of contract. The district court was correct to dismiss this claim. Appellants failed to allege a contract which was breached by Universal. Appellants' basic complaint was that they lost their jobs because of Crown's decision to discontinue its contract with Universal. Universal did lay off appellants as a result of Crown's decision. But under the collective bargaining agreement, Universal was entitled to lay off the drivers because of lack of work. Appellants did not allege that Universal had work for the drivers and still laid them off. Nor did appellants point to any other contractual duty which Universal may have breached by laying them off. Therefore, appellants failed to state a claim of breach of contract against Universal.
 
 CONSPIRACY CLAIMS
 
 18
 The district court granted summary judgment against appellants on their claims that the appellees conspired to breach the collective bargaining agreement. The court was correct in holding that federal courts do not have jurisdiction to entertain claims of conspiracy under § 301. Russom v. Sears, Roebuck & Co., 558 F.2d at 441 n.3; Abrams v. Carrier Corp., 434 F.2d 1234, 1253 (2d Cir. 1970), cert. denied sub nom. United Steelworkers of America v. Abrams, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971). The court did not abuse its discretion in dismissing the pendent state claims of conspiracy. Hodge v. Mountain States Telephone & Telegraph Co., 555 F.2d 254, 262 (9th Cir. 1977).
 
 CLAIMS AGAINST THE UNION
 
 19
 Appellants contend that the union breached its duty of fair representation by settling the 1973 unfair labor practice charge and by failing to file a grievance over the termination of their employment in 1975. The district court granted summary judgment for the union. We affirm.
 
 
 20
 Any claim based upon the settlement of the 1973 unfair labor practice charge is barred by the statute of limitations. The proper statute of limitations is Cal.Civ.Code § 338 which provides a three-year limit for liabilities created by statute. Price v. Southern Pacific Transportation Co., 586 F.2d 750, 753 (9th Cir. 1978). The complaint in this suit was filed on March 26, 1976, more than three years after the March 8, 1973, settlement agreement to which appellants object.
 
 
 21
 The union did fail to process a grievance against Crown over the termination of appellants' employment in 1975. Instead, the union filed an unfair labor practice charge with the NLRB. That action does not show a breach of the union's duty to represent appellants fairly. A union's decision not to file a grievance is wrongful only when the union's treatment of individual employees has been arbitrary, discriminatory, or in bad faith. Vaca v. Sipes, 386 U.S. at 190, 87 S.Ct. at 916; Fountain v. Safeway Stores, Inc., 555 F.2d 753, 756-57 (9th Cir. 1977). In this case, no facts are offered to indicate that the union's conduct was arbitrary, discriminatory, or in bad faith. The union filed a complaint with the NLRB, rather than a grievance, for tactical reasons. The union's attorney felt that course of action would be more effective because the sophisticated legal theories needed to establish a contract with Crown would appeal more to the NLRB than to the lay persons on a grievance committee. We think that uncontroverted facts show this decision to be a reasonable one, particularly in light of our conclusion that Crown was not bound by the terms of the collective bargaining agreement which established the grievance process. The union did not breach its duty of fair representation by not filing a grievance.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The Honorable James M. Burns, Chief United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 The district court ruled that any oral contracts memorialized by the Oakes letter were barred by the statute of frauds or by the statute of limitations. Because of the conclusion we have reached, we need not address these issues
 
 
 [2]
 We recognize that a § 301 claim is governed by federal substantive law, not by state law. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Federal courts may look to state law to formulate the federal rule, so long as state law is compatible with federal labor policy. Id. at 457, 77 S.Ct. at 918; Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 102, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962). There is no reason to reject the rule that state law would impose, unless it is inconsistent with federal labor law. International Union, United Auto Workers of America v. Hoosier Cardinal Corp., 383 U.S. 696, 706, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966). This choice of law poses no difficulty here, however, since the federal and state rules which apply to the alleged contract are consistent
 Collective bargaining agreements are not governed strictly by the law of contracts. Certified Corp. v. Hawaii Teamsters, Local 996, 597 F.2d 1269, 1271 (9th Cir. 1979). But appellants' claim in relation to the Oakes letter is not based upon a collective bargaining agreement. Appellants alleged that Crown guaranteed them permanent employment at the terms specified in their collective bargaining agreement. The contract, if it existed, did not arise from collective bargaining. See Eastern District Council, United Brotherhood of Carpenters v. Blake Construction Co., 457 F.Supp. 825, 830 (E.D.Va.1978). It did not cover the conditions of employment, as a collective bargaining agreement normally would. The contract merely identified the workers who would be employed by Crown at the terms specified in their collective bargaining agreement. Such a contract is an employment contract, not a collective bargaining agreement, under either federal or state law. J.I. Case Co. v. NLRB, 321 U.S. 332, 334-35, 64 S.Ct. 576, 578-579, 88 L.Ed. 762 (1944); Pratt v. Film Technicians, supra. Therefore, we would apply general rules of contract law as developed by federal courts, even if this claim falls under § 301.