**INDUSTRIAL PERSONNEL CORP., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**The B. F. GOODRICH COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 80–1758, 80–1759.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1981.

Decided Aug. 26, 1981.

Rehearing and Rehearing En Banc Denied Oct. 5, 1981.

Bernard P. Jewler, Atty., argued, William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., for respondent.

Thomas E. Lordan, Akron, Ohio, for petitioner, B. F. Goodrich Co.

William W. Allport, David R. Knowles, argued, Cleveland, Ohio, for petitioner, Industrial Personnel Corp.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

Petitioners Industrial Personnel Corp. (IPC) and the B. F. Goodrich Company (Goodrich) ask this Court to review and set aside a decision and order of the National Labor Relations Board (Board) entered July 28, 1980, holding that IPC and Goodrich are joint employers and that, as a result, IPC and Goodrich's refusal to bargain with the General Drivers and Helpers Local Union 823 (Union) on a joint-employer basis constituted a violation of section 8(a)(1) and section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5).[1] The Board has cross-applied for enforcement of its order. We deny the petition to set aside the Order and grant its enforcement.

IPC supplies various transportation services for companies throughout the country. Goodrich primarily manufactures tires, chemicals, and engineered products. To facilitate delivery of its products in the area of Tulsa, Oklahoma, Goodrich contracted with IPC to provide it with drivers for its trucking operation. In a nutshell, the agreement provides that IPC will hire drivers and handle most labor relations, while Goodrich will oversee the day-to-day operations of informing the drivers of their destinations and routes. Goodrich leases the trucks. Through its involvement, Goodrich complies with the Interstate Commerce Commission regulations that allow it to be classified as a "private carrier." Goodrich reimburses IPC for all of its expenses plus its service charges.

When the arrangement began in 1978, there was an existing contract between the Union and IPC. In August of 1979 the Union filed a representation petition seeking certification as the collective bargaining representative of drivers employed by both companies as joint employers. The companies opposed the petition on the basis of the existing contract and the fact that IPC was the sole employer. In October of 1979 the Board's Acting Regional Director found that IPC and Goodrich were joint employers. In December, after an election, the Union was certified as the bargaining representative for drivers employed by the joint employers.

Subsequently the companies refused to bargain and the Union filed an unfair labor practice charge in February of 1980. The Board's General Counsel issued a complaint in March; the answer alleged that the companies were not joint employers. The Board granted its General Counsel's motion for summary judgment in July of 1980. A cease and desist order was issued at the same time. The companies appealed to this Court.

The jurisdiction of this Court is invoked pursuant to Section 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(f).[2] Although the alleged unfair labor practice occurred in Tulsa, Oklahoma within the jurisdiction of the Court of Appeals for the Tenth Circuit, IPC and Goodrich have obviously chosen this circuit in order to rely on the decision in *Pulitzer Publishing Co. v. NLRB*, 618 F.2d 1275 (8th Cir. 1980).

The Eighth Circuit recently reiterated its test to determine whether a union's joint

---

* Earl R. Larson, United States District Judge, District of Minnesota, sitting by designation.

1. Section 8(a) provides in pertinent part:
   It shall be unfair labor practice for an employer—
   (1) to interfere with, restrain or coerce employers in the exercise of the rights guaranteed in section 7 of this title;
   . . . . .
   (5) *to refuse to bargain collectively with* the representatives of his employees.
   Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, grants employees the right to bargain collectively through representatives of their own choosing.

2. IPC and Goodrich have taken advantage of the following provision in § 10(f):
   Any person aggrieved by a final order of the Board . . . may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business.

employer claim is valid. The test applied was

> whether the total relationship of two nominally separate businesses reveals: "(1) some functional interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. While none of these factors, separately viewed, have been held controlling, stress has normally been laid upon the first three factors which reveal functional integration with particular reference to whether there is centralized control of labor relations."

*Miscellaneous Drivers Local 610 v. NLRB*, 624 F.2d 831, 833 (8th Cir. 1980) (per curiam) quoting *Pulitzer Publishing Co. v. NLRB*, 618 F.2d 1275, 1279 (8th Cir. 1980).

*Pulitzer* involved a reversal of a Board finding that a publisher and delivery company were joint employers. The facts are quite similar to the present case. There was a contractual relationship resulting in some functional interrelation of operations. The publisher determined where deliveries were made, the trucks bore the publisher's logo, and the contract was a cost-plus one. On the other hand, the deliverer hired and managed the employees, exercised day-to-day control, paid for insurance and owned the trucks.

*Local 610* involved the affirmance of a Board finding that a funeral home and a service which provided drivers and vehicles to the home and to others were not joint employers. The home obtained services by calling the driver service. The driver service then dispatched the driver and vehicle to the location specified by the home. The service hired employees, paid them, and billed the home a flat amount for driver and vehicle.

A third recent Eighth Circuit case, *Russom v. Sears, Roebuck & Co.*, 558 F.2d 439 (8th Cir. 1977), is also factually similar to the present case. There this Court affirmed a district court finding that Sears and an appliance repair service company were not joint employers. All of the service company's business was with Sears,

Sears did the training, the employees wore Sears uniforms and received employee discounts at Sears. The contract was cost-plus. The companies, however, were not interlocking; the service company was in total control of wages and working conditions, hired and fired employees, paid for insurance and owned and operated its own trucks and equipment. Although Sears may have made some suggestions concerning operations, the service company made its own decisions. It should also be pointed out that although the Court determined whether the two companies were co-employers, the issue being determined was whether Sears was bound under the contract signed between the service company and the union. The service company had gone out of business and its employees were absorbed by Sears—without their negotiated pension rights. So this was not a decision in the same posture as the present case and *Pulitzer*.

At oral argument this Court was made aware of the Ninth Circuit's recent decision in *Kaylor v. Crown Zellerbach, Inc.*, 643 F.2d 1362 (9th Cir. 1981). There the Ninth Circuit affirmed a district court finding on summary judgment that appellants had shown insufficient facts to hold Crown liable under a joint employer theory. Crown ran an in-house trucking operation to ship its goods around San Francisco Bay area and contracted with various companies to supply it with drivers for its trucking operation. Crown had full control over the dispatch, routing, and use of its trucks and the hours of service of the drivers. Nevertheless, we agree with the Board that, due to the circumstance that the joint employer question in *Kaylor* was disposed of by summary judgment, the full factual basis for the Ninth Circuit's decision cannot be ascertained. Therefore, comparisons with the present case are questionable. Even if the facts were identical, this Court is not bound by the Ninth Circuit's decision. *Kaylor*, like *Russom*, was in a slightly different posture than the present case and *Pulitzer*. At issue in *Kaylor* was whether Crown had breached a contractual duty to employ the

drivers of the various driver supply companies that had previously contracted with Crown. In the present case and in *Pulitzer*, the issue was whether Goodrich and Pulitzer were required to bargain with their drivers' unions.

In at least one previous case, *Ace-Alkire Freight Lines v. NLRB*, 431 F.2d 280 (8th Cir. 1970), this Court has affirmed the Board's finding that two companies engaged in the trucking business were joint employers. One company was a common carrier and the other leased trucks to the carrier. The lessor interviewed prospective employees, sent possibilities on to the carrier, and paid the wages. The carrier set age and experience requirements, reserved the right to reject drivers, dispatched drivers, and monitored their logs.

The standard to be applied in this appeal of a finding of fact by an administrative agency is whether the Board's finding that the companies are joint employers is supported by substantial evidence in the record as a whole. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–88, 71 S.Ct. 456, 463–64, 95 L.Ed. 456 (1951). With this standard in mind, and the test adopted by this Circuit to determine whether a joint employer relationship exists, we reach the following conclusions. To a significant degree, there is functional interrelation of operations between the two companies; IPC hires the drivers and Goodrich determines the conditions of employment. While IPC interviews, hires, disciplines, pays, and discharges employees, Goodrich controls the day-to-day operations of the trucking group. Goodrich determines the destination of the drivers and what routes they take. Drivers are required to call their location in to Goodrich each day, and their logs are sent to Goodrich.

Although there seems to be little centralized control of labor relations—IPC does most of it—Goodrich may on occasion get into this area due to its control over day-to-day operations. The Board found that since Goodrich has such control over day-to-day operations, it will inevitably handle labor problems. Extensive work rules are set out in an operating manual issued to drivers by Goodrich. Goodrich reserved a right to reject employees that do not comport with Department of Transportation (DOT) regulations and DOT requires Goodrich to annually review each driver's record to determine whether that driver meets minimum requirements for safe driving. While IPC sets the drivers' wages, Goodrich reimburses IPC and presumably has some control over those wages since it can rescind the IPC-Goodrich contract on thirty days' notice. Finally, although the control of labor relations is one factor to be considered, it is not controlling in and of itself.

Reviewing the factors as a whole, it is our feeling that there is significant functional interrelation of operations between the two companies. This is the factor largely relied upon by the Board. While IPC controls the direct labor relations, Goodrich's control of working conditions will inevitably involve it in labor relations. As a result, we think that the two companies should be compelled to bargain as joint employers.[3]

*Pulitzer* can be distinguished from the present case on several different grounds. First, in *Pulitzer* the delivery service exerted much more daily control over the employees than IPC did in this case. The delivery service in *Pulitzer* maintained its own facility where its drivers punched in and picked up their trucks. Assistant managers employed by the delivery service directed the drivers' routes and procedures according to a "run sheet" received from the Pulitzer dispatcher. In *Pulitzer*, if the drivers encountered any difficulty during the course of delivery, they were to report to the delivery service's assistant managers. In the present case, drivers are supposed to call Goodrich. Another distinguishing factor between the two cases involves the ownership of trucks. The fact that the delivery service in *Pulitzer* owned its own trucks and paid its own liability and property damage insurance supported its contention that it

---

**3.** We agree with the Board's finding that there is no common management, ownership or financial control but we find these facts are not crucial to our determination.

should be treated as a separate rather than a joint employer. In our case, Goodrich leases trucks from Ryder Rental and insures them itself; IPC merely provides drivers.

Accordingly, Goodrich's and IPC's petition for review and for the setting aside of the Board's decision are denied and the Board's order is enforced.