COMMUNICATIONS WORKERS OF
AMERICA AFL–CIO

v.

SOUTHWESTERN BELL TELEPHONE
COMPANY.

Civ. A. No. B–81–11.

United States District Court,
S. D. Texas,
Brownsville Division.

Oct. 6, 1981.

William N. Wheat, Houston, Tex., for plaintiff.

Eduardo R. Rodriguez, Brownsville, Tex., Joe L. Randle, Melanie S. Fannin, San Antonio, Tex., for defendant.

## MEMORANDUM AND ORDER

VELA, District Judge.

Upon consideration of Plaintiff's Application for Confirmation and Enforcement of Arbitration Award; after a hearing on the matter and the submission of post-trial briefs by both parties, this Court is of the opinion that said application should be DENIED. The following constitute the bases for the Court's decision in the matter.

### JURISDICTION

Jurisdiction to hear this action is conferred upon the Court by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

### FINDINGS OF FACT

On August 7, 1977 the Plaintiff, Communications Workers of America, AFL–CIO (hereinafter the Union) entered into a triennial collective bargaining agreement with the Defendant, Southwestern Bell Telephone Company (hereinafter the Company). Thereafter, on December 7, 1977 the Union and the Company entered into an agreement concerning practices and procedures regarding overtime, known as the Local Overtime Agreement.[1] This agreement

---

1. The text of the Local Overtime Agreement is as follows:

Our policy in the Corpus Christi Division with regards to overtime, absence, safety, quality, productivity, accidents or any other job related responsibility will be to eliminate unnecessary job losses such as suspensions where possible and place into effect a three step procedure. We plan to place this procedure into effect by the Union and Management no later than January 15, 1978. We hope this type of procedure would help to produce a more coordinated effort between the First line Foreman and the particular Job Steward or appropriate Union Representative in each work group.

*Step 1.*
The first preliminary step would be for the first line Foreman to inform his group what is expected of them with regards to the employees job related responsibilities.

(a) The Foreman is to relate to his group what is expected regarding overtime such as; in the event overtime is needed the Foreman is to let his group know as early as possible and where possible.

(b) In the event an employee should need off on a given day, the employee should inform his Foreman as early as possible.

(c) In the event of needed overtime, such as SN day, if the employee has a valid reason for not working overtime, then the Foreman as an alternative may go to other groups for help.

*Step 2.*
In the event of a problem that the Foreman recognizes pertaining to the employees responsibilities that was covered previously, the Fore-

was to be applicable in the Corpus Christi Division of Southwestern Bell, which includes the Rio Grande Valley area. The agreement went into effect on January 15, 1978.

In August, 1978 the Company suspended 28 employees in connection with a dispute concerning the assignment of overtime. The Union filed grievances protesting the suspensions and what it felt were violations of the Local Overtime Agreement by the Company in the manner of assignment of overtime.

In connection with these incidents and the course of conduct by the Company, the Union filed an unfair labor practice charge with the National Labor Relations Board on December 12, 1978, contending that the Company had, by its conduct, violated Sections 8(a)(1) and (5) of the National Labor Relations Act.[2] As a result, a complaint was issued against the Company on January 11, 1979 by the Regional Director of Region 23 of the National Labor Relations Board, Louis v. Baldovin, alleging that the Company had in fact violated Sections 8(a)(1) and (5) of the act. After a hearing on the matter had commenced, the Union and the Company entered into a Settlement Agreement in which they agreed that the terms of the Local Overtime Agreement

... are, and shall remain, in force and effect, and shall be enforceable by either party; and shall not be abridged, modified, or terminated unless and until the parties agree otherwise in the course of collective bargaining.

It is agreed and understood that either party may give notice of intent to terminate or modify this agreement on August 9, 1980 in the manner provided for by Section 8(d) of the National Labor Relations Act.

This Settlement Agreement was executed by the parties on May 30, 1979.

Subsequently, the grievance procedure between the Union and the Company having been completed with the denial by the Company of all the grievances filed in connection with the the August 1978 course of conduct by the Company, the contested matters between the parties were submitted to arbitration in accordance with the procedures set forth in the 1977 triennial collective bargaining agreement. Arbitrator James C. Vadakin was selected by the parties and empowered to hear and decide the dispute. Hearings were held on the matter by Arbitrator Vadakin on March 17th and 18th, and May 15th and 16th of 1980. On May 16, 1980 the Union and the Company reached an agreement in settlement of the dispute before Arbitrator Vadakin. An award embodying the terms of that settlement was issued by Arbitrator Vadakin on June 16, 1980. In the portion pertinent to the issue before this Court, the award provides:

6. The Company reaffirms the agreement set forth herein as Joint Exhibit 3; and

7. The Company and the Union agree that these provisions are to be entered by the Arbitrator on Agreed Award which shall be of the same force and effect as any other award pursuant to arbitration between the parties.

Joint Exhibit 3 contains the Settlement Agreement reached in the National Labor Relations Board case.

---

man is to contact a Job Steward or an appropriate Union Representative to discuss with the employee that a problem exists jointly the Foreman and Steward will attempt to resolve the problem.

*Step 3.*

If a third approach is necessary with a problem previously covered in Step 2 with the employee and all efforts have been exhausted by Management and the Union, then the Company reserves the right to discipline the employee and the Union reserves the right to grievances if it deems appropriate.

2. Title 29 U.S.C. § 158. Unfair labor practices.

(a) It shall be an unfair labor practice for an employee—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

. . . . .

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

Before this Agreed Award was issued, the Company, on May 27, 1980 through Mr. Zack F. Bettis, Assistant Vice President-Labor Relations, sent a letter to Mr. Jack C. Lovett, Vice President, District 6, Communications Workers of America, notifying the Union of the Company's intent to terminate the Local Overtime Agreement on August 9, 1980. At no time did the Company notify the Federal Mediation and Conciliation Service, or the Texas Department of Labor, as to the existence of a dispute in this matter. Further, the Company did not offer to meet and confer with the Union for the specific purpose of negotiating a successor contract to the Local Overtime Agreement.

In July of 1980 the Union and the Company entered into negotiations for the purpose of negotiating a successor collective bargaining agreement to the 1977 collective bargaining agreement. During the course of these negotiations the Company brought up for consideration the matter of the Local Overtime Agreement and its provisions regarding the assignment of overtime. The Union rejected all attempts by the Company to alter or modify the Local Overtime Agreement through the process of collective bargaining. In August of 1980, a new triennial collective bargaining agreement was entered into by the parties. Although the new agreement contained a provision limiting the number of hours of overtime that could be assigned, there was no provision in the agreement concerning the procedure to be used to assign overtime, which was the subject of the Local Overtime Agreement.

## CONCLUSIONS OF LAW

■ There is no question that federal courts should refuse to review the merits of an arbitration award reached by arbitration under a collective bargaining agreement. *United Steel Workers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). The issue in the case before the Court, however, is not the merits of the arbitration award, but is whether or not the Local Overtime Agreement, which was reaffirmed in paragraph 6 of the arbitration

award, was terminated by the Company's actions. If the Company's actions had the effect of terminating the Local Overtime Agreement, the fact that the Company had, prior to this, reaffirmed the agreement in the agreed award, fails to impart any life or extra significance to that agreement.

The question of whether or not the Local Overtime Agreement was terminated must be addressed in two parts. First, it must be determined whether the Local Overtime Agreement could be terminated by unilateral action on the part of the Company. If so, then the Court must determine whether the actions taken by the Company were sufficient to terminate the agreement.

■ It is well settled that a labor contract of indeterminate duration is terminable at will by either party upon reasonable notice to the other party. *Boeing Airplane Co. v. NLRB*, 174 F.2d 988, 991 (D.C.Cir. 1949); *Trustees of the Atlanta Iron Workers Local 387 Pension Fund v. Southern Stress Wire Corp.*, 509 F.Supp. 1097, 1105 n.12 (N.D.Ga.1981); *Eastern District Council of the United Brotherhood of Carpenters and Joiners of America v. Blake Construction Co., Inc.*, 457 F.Supp. 825, 830 (E.D.Vir. 1978); *Uriarte v. Perez-Molina*, 434 F.Supp. 76, 79 (D.D.C.1977). *Cf. Kaylor v. Crown Zellerbach, Inc.*, 643 F.2d 1362, 1367 (9th Cir. 1981) (concerns an employment contract as opposed to a collective bargaining agreement). Both parties agree that the Local Overtime Agreement was, at its inception, a terminable at will contract since it had no expiration date. The Union contends, however, that the provisions in the Settlement Agreement which supplied procedures by which the Local Overtime Agreement could be terminated, changed the nature of the agreement.

The Settlement Agreement provided that the Local Overtime Agreement, "... shall not be abridged, modified, or terminated unless and until the parties agree otherwise in the course of collective bargaining." This provision would seem to prevent either party from unilaterally terminating the agreement. However, there are sound reasons why that is not, and should not be the effect of the provision.

The language of the foregoing provision, read by itself would seem to say that the Local Overtime Agreement would remain in effect indefinitely unless both parties agreed to modify or to terminate it. This is the interpretation that follows from the Union's position. If such were the case, then a party desiring modification of the agreement, due to a change in conditions or any other circumstances, would be confined to an unchangeable agreement forever if the other party perceived no benefit in changing the agreement. This result would be untenable as the following passage from *Local 350, United Association of Journeymen v. Slayden,* 91 LRRM 2272, 2274 (N.D. Cal.1975), referred to and the reasoning therein adopted by the Court in *Kaufman and Broad Home Systems, Inc. v. International Brotherhood of Firemen and Oilers, AFL–CIO,* 607 F.2d 1104, 1110 (5th Cir. 1979), points out:

> It is inconceivable that either party, wishing to avoid a breakdown of labor-management relations would have intended that the contract remain in force unless efforts to change the contract were successful, or unless both sides wanted to terminate the contract. The side not desiring a change could refuse to agree, within the confines of the Labor-Management Relation's Act prescription against refusals to bargain. Each side could stand entrenched knowing the contract would continue as it was. The side desiring to alter the terms or conditions of the relationship would never have a prayer.

■ This same reasoning would apply in the instant case. Indeed, it would apply even if the provisions in the Settlement Agreement were read as converting the Local Overtime Agreement into an automatically renewable agreement. The Settlement Agreement provides that, "... either party may give notice of intent to terminate the agreement on August 9, 1980 ..." August 9, 1980 could be viewed as the date when the Local Overtime Agreement would be automatically extended, unless a notice of intent to terminate or modify the agreement had been given by either party. Automatically renewable agree-

ments are, in fact, contracts of indeterminate duration. See *Boeing Airplane Co. v. Aeronautical Industrial Dist. Lodge No. 751, of International Assn. of Machinists,* 91 F.Supp. 596, 603 (W.D.Wash., 1950), aff'd per curiam, 188 F.2d 356 (9th Cir. 1951), cert. denied, 342 U.S. 821, 72 S.Ct. 39, 96 L.Ed. 621 (1951). As such, they are terminated at will, by either party, upon reasonable notice. *Kaufman,* 607 F.2d at 1109; *Boeing,* 91 F.Supp. at 603.

■ In light of the foregoing, it is clear that however the relevant provisions of the Settlement Agreement are interpreted, the Local Overtime Agreement remained an agreement of indeterminate duration, and thus was terminable at will upon proper notice by either party.

■ The "proper notice" provided for by the parties in the Settlement Agreement is notice, "... in the manner provided for by Section 8(d) of the National Labor Relations Act." The Act provides in Title 29 U.S.C. § 158(d), in the portion relevant to this case:

> That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—
>
> (1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;
>
> (2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;
>
> (3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territory agency

established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

(4) continues in full force and effect, without resorting to strike or lockout, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later:

The letter sent by the Company to the Union on May 27, 1980 certainly complied with Section 158(d)(1). The letter gave the Union notice of the proposed termination of the Local Overtime Agreement. Such notice was given more than sixty days prior to the expiration date of the contract (if that is what the August 9, 1980 date given in the Settlement Agreement amounted to) or to the date proposed as the termination date.

Section 158(d)(4) was also complied with. The Company did not resort to a lockout. Further there is no question that the Company gave the Local Overtime Agreement full force and effect between May 27, 1980, the date notice was sent, and August 9, 1980, the expiration date or the proposed expiration date of the agreement.

This Court finds that the Company complied with the requirement in Section 158(d)(2). The August 9, 1980 date in the Settlement Agreement is the same date as the expiration date of the 1977 Collective Bargaining Agreement. Having set the same date, it seems obvious that the parties contemplated that any negotiations, if necessary, concerning the provisions of the Local Overtime Agreement would take place at the same time as the negotiations concerning the triennial collective bargaining agreement, set to begin in July of 1980. No formal or written separate offer to meet was given, but Section 158(d)(2) does not require written notice as Section 158(d)(1) does. Further, the purpose of the provision was met in that the Company made itself available to discuss and negotiate the Local Overtime Agreement at the collective bargaining sessions.

█ Finally, this Court finds that the provisions in Section 158(d)(3) are not applicable in this case. Notice to the Federal Mediation and Conciliation Service and the State agency charged with mediating and conciliating disputes is required only when there is the threat of a strike or lockout. *See Procter and Gamble Independent Union of Port Ivory v. Procter and Gamble Manufacturing Co.*, 312 F.2d 181, 188 (2nd Cir. 1902), *cert. denied*, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1969). In *Allied Chemical and Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co., Chemical Division*, 404 U.S. 157, at 187, 92 S.Ct. 383, at 401, 30 L.Ed.2d 341 (1971), the Court noted that:

> The structure and language of § 8(d) point to a more specialized purpose than merely promoting general contract compliance. The conditions for a modification or termination set out in paragraph (1) through (4) plainly are designed to regulate modifications and terminations so as to facilitate agreement in place of economic warfare. Thus, the party desiring to make a modification or termination is required to serve a written notice on the other party, offer to meet and confer, notify mediation and conciliation services *if necessary*, and meanwhile maintain contract relations. (emphasis supplied).

Thus, the notice to mediation and conciliation agencies is only required when economic warfare is contemplated by the party wishing to terminate. Since the Company did not contemplate a lockout, and a lockout was not put into effect, the Section 158(d)(3) notice was not required.

In light of the foregoing, this Court finds that the Local Overtime Agreement was terminable upon reasonable notice by either party, and that proper notice was given by the Company to the Union in accordance with the provisions of the Settlement Agreement. Therefore, the Local Overtime Agreement was terminated, and no longer in force and effect, after the date of August 9, 1980.

This Court does not reach the Defendant's contention that the Local Overtime Agreement was a supplement to the 1977 triennial agreement and thus subject to being superceded by the 1980 collective bargaining agreement.

Accordingly, the relief sought by Plaintiff is hereby DENIED.